No. 57,059

STEPHEN L. WAITE, *Appellee,* v. LARRY ADLER and MIDLAND NA-
TIONAL BANK OF NEWTON, KANSAS, *Appellants/Cross-Appellees.*

(716 P.2d 524)

Opinion filed March 28, 1986.

*David C. Burns,* of Speir, Stroberg & Sizemore, of Newton, argued the cause, and *A. James Gillmore,* of the same firm, was with him on the briefs for appellants/cross-appellees.

*Frederick K. Starrett,* of Ralston & Starrett, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Stephen L. Waite, to recover actual and punitive damages from Larry Adler, a senior vice-president of Midland National Bank of Newton (Midland Bank), and from the bank for alleged fraudulent misrepresentations as to the financial status of Don Goucher Motors, Inc., a new car dealership in Newton. Simply stated, plaintiff contended that he invested $51,000 in Don Goucher's

automobile dealership, because he was induced to do so by false information supplied him by Adler. The case was tried to a jury, which brought in a verdict in favor of plaintiff in the amount of $51,000. The trial court entered judgment on the jury's verdict. Defendants appealed and plaintiff cross-appealed.

For the purposes of this appeal, we will construe the evidence favorably toward the plaintiff as prevailing party and, in so doing, assume that the following facts are true: In November, 1977, Don Goucher was the owner and operator of Don Goucher Motors, Inc., a new car dealership in Newton. In that month, plaintiff Stephen L. Waite was approached by Don Goucher about investing in the dealership. At that time Waite was the division manager for the Kansas Power and Light Company in Hutchinson but had no prior banking experience, nor had he ever been involved in a car dealership. As a result of his contact with Goucher, plaintiff began investigating the possibility of investing in the dealership. The specific sum he had in mind was in the neighborhood of $50,000. At that time, Goucher Motors was heavily indebted to the Midland National Bank. Larry Adler, the bank officer, was a close personal friend of Don Goucher and was in charge of the account of Goucher Motors at the bank.

Waite was advised by Goucher that the best person to talk to about evaluating the business affairs of Goucher Motors was Larry Adler, because Larry Adler was in charge of the bank loans and had the records in regard to the business. It is undisputed that Goucher told Waite that the business was losing money, because it did not have the necessary cash flow. Goucher also told Waite that he was working on cutting expenses so that the business could make a profit.

Following this conversation, Waite got in touch with Adler at the bank and advised him that he wanted to talk to him about Goucher Motors. Adler refused to discuss the matter without first obtaining Goucher's permission. Goucher then gave Adler his approval to discuss the business with Waite. On November 15, 1977, Waite telephoned Adler and they had a seventeen-minute telephone conversation. It is this telephone conversation which later brought about the filing of the present lawsuit.

The evidence was undisputed that, prior to the telephone conversation between Waite and Adler on November 15, 1977, Goucher's credit standing at Midland Bank left a great deal to be

desired. In October of 1977, the bank's loan review report on Goucher Motors recommended that Goucher be advised to take either a minority or majority capital partner with the ability to inject $100,000 to $150,000 new equity into the business. The evidence further discloses that in May and June of 1977, a bank examiner for the Comptroller of the Currency had advised the bank that there were problems with the Goucher loans. The report indicated that there were violations in regard to capital limitations and that the existing loan on April 29, 1977, was $30,646 above the legal lending limit. The report indicated, however, that the loans had been reduced to the conforming amount on June 1, 1977, by a loan payment. The report indicated that Goucher Motors had extremely burdensome debts and a severely marginal capital position which should be strictly scrutinized by the loan officers. Following this report, the Midland Bank placed the credit line of Goucher Motors on an internal watch list, where it remained until the business closed in May 1978. There was also evidence that Goucher had been selling automobiles out of trust which meant, in effect, that he sold automobiles, received the purchase price, and did not promptly pay the amount of the security interest thereon to the bank as required by the loan. In October of 1977, the defendant bank advised Goucher to get an investor with $100,000 to $150,000 in new capital. At that time, the bank also changed from monthly audits to substandard weekly audits of new cars in Goucher's possession. The president of the bank testified that the Goucher line of credit was in trouble and the bank was concerned about getting repaid. It was at this point that Goucher urged Waite to become an owner of Goucher Motors by making a substantial capital investment.

As noted heretofore, the telephone conversation between Waite and Adler took place on November 15, 1977. Waite testified that, at that time, he wanted figures about the business so that he could prepare projections to show the Buick Motor Division what Goucher Motors was going to do, and so that he could find the areas of expenses that needed to be cut. According to Waite, he and Adler talked about the necessity of cutting expenses, used car inventory needs, the status of the Small Business Administration loan, and the floor plan for autombiles which was then in effect. Waite testified that he wanted Adler's

opinion and anything Adler could provide which would tell him what the future possibilities of the business were. Adler told Waite that one could not really tell from the financial statement that the Goucher business had good potential and lots of possibilities. They specifically discussed information that was on the financial statement and they talked about the most recent month's figures involving the business of Goucher Motors.

Waite testified, without equivocation, that Adler mentioned that the business was losing money. Adler was happy with the volume of sales, but Goucher had geared up too much for a high volume and, when the volume came down, there just wasn't any margin. Waite testified that they specifically looked at the number of cars sold, the revenues on those cars, the expenses, and the losses. Specifically, Adler recommended better management, cutting down on expenses, and an additional input of money. It was understood that the plaintiff was to provide all three of these elements. They discussed the floor plan provided by the bank. According to Waite, Adler answered every question he asked. When the telephone conversation was ended, Waite was satisfied that Adler had confidence in the business of Goucher Motors and that the bank's position was solid. It is clear that at the time the telephone conversation took place Waite had access to the books and records of Goucher Motors.

It is also undisputed that Adler did not inform Waite as to the status of Goucher Motors' loans with the bank, or of the questions that had been raised by the bank examiner. Adler did not advise Waite that he had advised Goucher that $100,000 to $150,000 new capital would be required to get the business back on an even keel. He did not advise Waite that Goucher's line of credit was on the bank's watch list and that it was being checked weekly. Waite testified that he relied upon his conversation with Adler, believing that the bank's credit position was solid and, as a result of the telephone conversation with Adler, he invested $51,000 of his own money in the dealership.

On November 23, 1977, Waite got all of the Goucher business records together, drafted a history of the business, and then made projections as to the future prospects of the business. Waite went over these projections with Goucher, Adler, and representatives of General Motors. In December of 1977, serious steps were taken to reduce business expenses, but the dealership was still

having problems. In January of 1978, the bank reduced the bank floor plan from $235,000 to $75,000. Waite asked Goucher to set up a meeting with Adler to discuss the reasons for this action. Adler advised them the bank annually reviewed floor plans and Goucher's plan had just been reviewed and reduced. The effect of the reduced floor plan was to change Goucher Motors from a new car dealership to a used car dealership without used car financing. Adler showed Waite figures which demonstrated that Goucher was performing far below industry averages. For the year just ending, Goucher's cost of goods sold exceeded those of the industry average. Goucher Motors' gross profits were less than average. Adler advised Waite and Goucher that the floor plan could be increased if the dealership made a profit in the future.

Waite testified that they were all aware that the business had been losing money. Waite frankly told Goucher that he did not think the business could make it on Adler's promise that he could get the floor plan reinstated when they made a profit. Waite and Goucher immediately took steps to make a greater profit by laying off employees and dedicating their own time to keep the business open for longer hours. Thereafter, in an attempt to keep the business going, Waite and Goucher borrowed $20,000 from Waite's father and also borrowed additional money. These efforts were unsuccessful.

On May 12, 1978, it was pointed out to Adler by a bank inspector that Goucher had been selling automobiles out of trust without making prompt payment to the bank at the time of the sale, in violation of the agreement with the bank. On that date, Adler discussed the matter with Goucher who admitted to that action. At that time, the Midland Bank foreclosed its lien and took control of the inventory until such time as it could be liquidated and applied to the loan balances at the bank. Goucher then called Waite and told him that the bank was closing the business.

Thereafter, Waite never again contacted Adler or the bank and on May 30, 1980, filed the present action against Larry Adler and the Midland National Bank seeking to recover for alleged fraudulent misrepresentations as to the financial status of Don Goucher Motors, Inc. The plaintiff, in his pleadings and at the pretrial conference, relied upon several legal theories to justify

his claim against Larry Adler and the bank. Plaintiff pleaded alternative claims based on fraudulent misrepresentation, fraudulent concealment, fraudulent promise of future conduct, breach of fiduciary duty, breach of contract, promissory estoppel, and conversion. At the close of the evidence, defendants filed a motion for a directed verdict on all theories of relief, which was denied as to all theories except conversion. The jury was instructed on all of the theories and awarded the plaintiff $51,000 actual damages without specifying the theory on which damages were awarded.

On the appeal, the defendants contend that the trial court erred in denying defendants' motion for a directed verdict on each of the theories asserted. We have concluded on the basis of the undisputed evidence and the testimony of the plaintiff, Stephen L. Waite, that there was no basis for his claims of fraudulent promise of future conduct, breach of contract, or promissory estoppel. There is no evidence whatsoever in the record that Adler promised or agreed to take action or refrain from taking action in regard to the Goucher loans and line of credit. There is no evidence in the record of a contract or an agreement by Adler to do or not to do anything. The only claimed theories which could be supported by the evidence are plaintiff's claims based on fraudulent misrepresentation or fraudulent concealment. On the theories of fraudulent misrepresentation and fraudulent concealment, the issue presented is extremely close, but we do not deem it necessary to decide whether or not the evidence was sufficient to support plaintiff's claims on those theories.

This court has concluded that the appeal in this case should be determined on the basis that the plaintiff's claims, assuming they have validity, are barred by the two-year statute of limitations under K.S.A. 60-513(a)(3), which provides, in substance, that an action for relief on the ground of fraud must be brought within two years, but the cause of action shall not be deemed to have accrued until the fraud is discovered. Under Kansas law, a fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered. *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 62-63, 643 P.2d 100 (1982).

The jury was instructed, in substance, that if the plaintiff

discovered the fraud in this case or by exercising reasonable diligence could have discovered such fraud prior to May 30, 1978, it must decide in favor of the defendants. The plaintiff contends that he was not aware of the poor credit standing of Goucher Motors with Midland Bank until he discovered the true facts after the case was filed. Plaintiff testified that he was not aware that the bank went to substandard weekly audits, that Goucher had sold cars out of trust, that Adler advised Goucher that the business needed $100,000 to $150,000 to become profitable, or that the examiner for the Comptroller of the Currency had indicated violations of loan limitations until after the case was filed and discovery efforts uncovered the true facts.

The defendants, on the other hand, maintain that the plaintiff knew or should have known that the credit standing of Goucher Motors with the bank was bad in January of 1978, when the amount of the floor plan was reduced from $235,000 to $75,000, or, at the very latest, on May 12, 1978, when the bank called in its loan and started to liquidate the inventory to satisfy the debts owing to the bank. We have concluded that, on the basis of the undisputed evidence in this case, any fraud on the part of Adler either was discovered or, with reasonable diligence, could have been discovered not later than May 12, 1978, when the bank took over the Goucher Motors inventory for liquidation.

The concealment of the items of information which plaintiff Waite testified were not revealed to him during the seventeen-minute telephone conversation with Adler amounted, in effect, to a misrepresentation that the credit standing of Goucher Motors with Midland Bank was excellent and that there were no problems existing at the time. Waite clearly should have known that the credit standing of Goucher Motors with the bank was bad when the floor plan was reduced to $75,000 in January of 1978, and beyond any question should have known it when the bank took possession of the Goucher inventory for liquidation on May 12, 1978. The plaintiff waited to file his action more than two years after the bank took possession in order to liquidate the inventory. Under the circumstances, the action was not filed within the two-year period of statutory limitations provided for in K.S.A. 60-513(a)(3), and plaintiff's cause of action is barred.

The judgment of the district court is reversed and judgment is entered in favor of the defendants.

SCHROEDER, C.J., not participating.