**Marcia BAGBY, et al., Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**No. 99–4011–RDR.**

United States District Court, D. Kansas.

June 8, 2000.

Timothy H. Girard, Grant M. Glenn, Bruce J. Woner, Woner, Glenn, Reeder & Girard, Topeka, KS, for Marcia Bagby, As Successor Trustee of the Sterling C. Klugg and Miriam R. Klugg Trust, Miriam R Klugg, plaintiffs.

Gordon D. Gee, Lynne C Kaiser, Rachel H. Baker, Rod L. Eisenhauer, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for Merrill Lynch Pierce Fenner & Smith, a Delaware Corporation, defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action. Plaintiffs contend that they sustained certain losses due to the acts or omissions of the brokerage firm Merrill Lynch, Pierce, Fenner & Smith, Inc. This matter is presently before the court upon defendant's motion for summary judgment. The defendant contends that plaintiffs' claims are barred by the applicable statutes of limitations. Having heard oral argument on the defendant's motion, the court is now prepared to rule.

### I.

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York In-*

*tern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## II.

For the purposes of the instant motion, the facts are not generally in dispute. The following facts are either uncontroverted or viewed in the light most favorable to the plaintiffs.

On August 26, 1987, Sterling and Miriam Klugg established the Sterling C. Klugg and Miriam R. Klugg Trust ("the Klugg Trust"). Murray F. Hardesty, a Topeka, Kansas attorney, was appointed by the Kluggs as Trustee.

The Kluggs had accumulated holdings of various stocks, and their stock portfolio was transferred to the corpus of the Trust. Prior to the establishment of the Trust, Sterling Klugg had been an active participant in the management of the Klugg portfolio. On September 11, 1987, the stock portfolio was valued at approximately $357,718.75. Using Sterling Klugg's social security number, Hardesty opened Account Number 504–34423 in his own name with the defendant in September 1987. The Merrill Lynch account representative assigned to the account was Bill Johnson, Hardesty's brother-in-law. Sterling Klugg passed away in June 1988. For several years after the death of Sterling Klugg, Miriam Klugg relied upon Hardesty and the defendant to look after her best interests.

On November 24, 1993, Hardesty filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Kansas. In that petition, he listed Miriam Klugg as a creditor. On December 27, 1993, Hardesty filed a statement of financial affairs with the bankruptcy court. This document showed that Hardesty owed Miriam Klugg $547,063.00. The statement also showed assets of $1,612,950.73 and liabilities of $2,025,-352.27. Unsecured nonpriority claims (which included Miriam Klugg's claim) totaled $2,025,352.27.

On January 6, 1994, Miriam Klugg was appointed to the Unsecured Creditors' Committee ("the Committee") in the Hardesty bankruptcy. The Committee applied to have Bruce Woner of the law firm of Woner, Glenn, Reeder, Lowry & Girard, plaintiffs' attorney in this action, represent it in the Hardesty bankruptcy. The Committee sought to investigate the financial affairs and transactions of Hardesty. On the same day that the Committee was appointed, Woner, on behalf of the Committee, moved the court for an order requiring the defendant to produce certain documents for any accounts in which Hardesty had any interest, including Account No. 504–34423. On January 26, 1994, the bankruptcy judge granted this motion.

On February 2, 1994, Woner's law firm sent a subpoena to the defendant for the aforementioned requested documents. These documents were produced by the defendant to Woner's law firm on March 22, 1994. Monthly account statements were provided for nine accounts. For Account No. 504–34423, the defendant provided monthly account statements from August 1987 through January 1994. These monthly account statements show numerous transfers out of Account No. 504–34423 into Hardesty's personal accounts. The last activity in the account other than automatic dividend reinvestments was on September 13, 1993, when there was an $8,000.00 withdrawal.

On April 12, 1994, the Committee's attorneys wrote to the defendant, listing all 27 transfers out of Account No. 504–34423 to other Merrill Lynch accounts in which Hardesty had a personal interest. On May 7, 1994, after certain criminal charges were brought against Hardesty (including certain charges related to the Klugg Trust), he was replaced as Trustee of the Trust by plaintiff Marcia Bagby.

On May 25, 1994, Woner conducted a Rule 2004 examination of Hardesty in the bankruptcy matter. During the examination, Woner stated that he had "reviewed a number of documents" and asked Hardesty about assets transferred by Hardesty out of the Klugg account at Merrill Lynch into Hardesty's personal account.

On June 29, 1994, Miriam Klugg filed a proof of claim in the Hardesty bankruptcy in the estimated amount of $547,063.00 for "trust funds unaccounted for by debtor." The claim states that $547,063.00 "is an estimate of the amount of funds that the debtor took from a trust account on which he was the trustee. This amount is based on an accounting provided to Miriam Klugg as of 10/31/93."

On or about October 13, 1994, the Klugg Trust filed a United States Fiduciary Income Tax Return for 1993 naming Marcia Bagby as fiduciary and claiming a theft loss of $547,063.00 as a result of "Misappropriated Trust Corpus." In August 1995, Hardesty pleaded guilty to theft or embezzlement from an employee benefit plan, mail fraud and money laundering.

The only transactions in Account No. 504–34423 between October 1993 and February 1995 were automatic dividend reinvestments into money market shares. None of the transactions during this period were the result of any communication with the defendant by the plaintiffs. The defendant never provided investment advice to the plaintiffs. In April 1995, Account No. 504–34423 was closed by Bagby, and all assets were transferred to Account No. 504–43598. She closed this account in June 1995.

Plaintiffs and the defendant entered into a tolling agreement, effectively tolling the statutes of limitation as to all causes of action existing, if any, effective February 20, 1997. On December 31, 1998, plaintiffs filed this action in state court. The action was removed to this court on February 8, 1999.

### III.

In this case, plaintiffs contend that the defendant breached various contractual, statutory and other obligations to them in their handling of the Klugg Trust account. Generally, they contend that the defendant did not prevent Hardesty from (a) transferring assets out of the account, and (b) making inappropriate trades in that account. Plaintiffs allege six causes of action: negligence, breach of fiduciary duty, fraud by silence, violations of federal and state securities laws, breach of express and implied contract, and breach of the obligations of a constructive trustee.

The defendant contends in the instant motion that all of the claims asserted by the plaintiffs are barred by the applicable statutes of limitations under Kansas law. The defendant argues that all of plaintiffs' claims accrued prior to February 19, 1994.

■ As a general rule, a federal court exercising diversity jurisdiction applies the statute of limitations of the forum state. *Dow Chemical Corp. v. Weevil–Cide Co., Inc.*, 897 F.2d 481, 483–84 (10th Cir.1990). Thus, the court looks to Kansas' statutes of limitations. The parties are in general agreement as to the length of the appropriate statute of limitations for each cause of action asserted by the plaintiffs. Nevertheless, the court shall briefly discuss the claims asserted by the plaintiffs, the applicable statute of limitations, and the applicable accrual rules.

### IV.

A. *Negligence and Breach of Fiduciary Duty*

In their first claim for relief, plaintiffs allege that "Merrill Lynch breached its

obligation to exercise reasonable skill, care and diligence as an agent of the Trust by failing to prevent Hardesty from making unauthorized transfers of the Trust assets and from engaging in excessive and unsuitable securities transactions." This negligence claim is governed by a two-year statute of limitations. K.S.A. 60–513(a)(4); *Biritz v. Williams,* 262 Kan. 769, 942 P.2d 25, 27 (1997); *RTC v. Scaletty,* 257 Kan. 348, 891 P.2d 1110, 1114 (1995).

In plaintiffs' second claim for relief, plaintiffs allege that "Merrill Lynch breached its obligation to exercise undivided loyalty, fidelity and good faith as an agent of the Trust by participating in, or at least failing to prevent, Hardesty's practices of making unauthorized transfers of the trust assets and engaging in excessive and unsuitable securities transactions." This claim is apparently one for breach of fiduciary duty, which is also covered by the two-year statute of limitations period of K.S.A. 60–513(a)(4). *Scaletty,* 891 P.2d at 1114.

In their sixth claim for relief, plaintiffs allege that "Merrill Lynch should be held accountable as a constructive trustee for the losses sustained by plaintiffs." As suggested by the defendant, the nature of this claim is vague. The claim appears to be a species of a breach of fiduciary duty. This cause of action would also fall within the two-year statute of limitations period set forth in K.S.A. 60–513(a)(4).

The accrual of claims controlled by the two-year statute of limitations set forth in K.S.A. 60–513 is generally governed by K.S.A. 60–513(b), which provides that these claims "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party. . . ." K.S.A. 60–513(b). "An injury is reasonably ascertainable when the plaintiff knew or could reasonably have been expected to know of the alleged negli-

gence." *Knight v. Myers,* 12 Kan.App.2d 469, 748 P.2d 896, 901 (1988). The term "reasonably ascertainable" carries with it an obligation to investigate available factual sources. *See Davidson v. Denning,* 259 Kan. 659, 914 P.2d 936, 946 (1996). An objective standard based upon an examination of the surrounding circumstances must be applied to determine accrual of such claims. *P.W.P. v. L.S.,* 266 Kan. 417, 969 P.2d 896, 902 (1998).

For the purposes of the tort claims, the key to the accrual of the claims is knowledge of the injury. A recent case with facts analogous to this one provides some guidance concerning this issue. In *Henrichs v. Peoples Bank,* 26 Kan.App.2d 582, 992 P.2d 1241 (1999), the executrix of Gertrude W. Hoener's estate alleged that the defendant Bank negligently or knowingly allowed Ronald Hoener to wrongfully misappropriate funds from Gertrude's bank account. In 1988, Gertrude had signed a signature card at the Bank giving Ronald authority to write checks on her account. She also executed a broad power of attorney allowing Ronald to draw checks on her account and to surrender for cash any of her certificates of deposit. The signature card signed by Gertrude directed the Bank to send her monthly bank statements to her in care of Ronald. In 1990, Gertrude entered a nursing home. Between 1988 and 1993, large amounts of money were withdrawn from Gertrude's account by Ronald. In September 1993, Gertrude and her family members were informed by Gertrude's attorney that Gertrude was running out of money with which to pay for her care at the nursing home. As a result, Gertrude, with the advice of her attorney, was considering executing a power of attorney which would allow Ronald to sell some of her real estate, if necessary, to pay for her care. Gertrude died in 1995. The executrix filed this action in 1996. The Bank sought summary judgment, arguing that the claims were barred by the statute of limitations. The district court agreed and the Kansas Court of Appeals affirmed. The court noted that Gertrude

and her family members were aware in September 1993 that Gertrude's assets had been mostly depleted. 992 P.2d at 1244. The court determined that the two-year statute of limitations began to run then because at that point Gertrude had a duty to investigate. *Id.*

The reasoning and holding of *Henrichs* must be applied here. In *Henrichs*, the key issue was when did the victim learn of her loss or injury. There, the Kansas court determined that she learned of her injury when she received some information that her assets at the bank had been depleted. It was at that time that her tort causes of action accrued and she had a duty to investigate. The same circumstances are present here. In December 1993, Mrs. Klugg was made aware through the bankruptcy proceeding that most of the assets she had entrusted to Hardesty had disappeared. She further understood by at least January 1994 that some of her assets had been held by the defendant. At that point, plaintiffs' injury was reasonably ascertainable. Plaintiffs had a duty to investigate the cause of her loss and timely file an action within the applicable statute of limitations.

Even if the statutes of limitations for the purposes of the tort claims did not accrue by January 1994, they certainly had begun to run well over two years prior to February 20, 1997, the date the statute of limitations was tolled. By February 19, 1995, all of the pertinent information concerning the Klugg Trust account at the defendant was known to plaintiffs and their counsel. By that date, they knew all of the details concerning the precise amount of the transfers and withdrawals of which they now complain.

B. *Fraud and Securities Laws Violations*

In their third claim for relief, plaintiffs allege "Merrill Lynch breached its duty to disclose to the plaintiffs the practices of Hardesty which were, at a minimum, highly questionable, and to give them the opportunity to timely investigate and seek independent advice; its breach of this duty constitutes fraud by silence." A two-year statute of limitations applies to fraud claims in Kansas. K.S.A. 60–513(a)(3). The statute of limitations for fraud claims does not accrue until the "fraud is discovered." *Id.* Fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered. *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 643 P.2d 100, 108 (1982).

In their fourth claim for relief, plaintiffs allege that "Merrill Lynch engaged in fraudulent and deceptive practices by the letter and the spirit of the securities statutes and regulations of the United States and the State of Kansas." The statute of limitations for a claim based upon the violation of state securities laws is three years. *See Kelly v. Primeline Advisory, Inc.,* 256 Kan. 978, 889 P.2d 130, 135 (1995); *Mid Kansas Federal S & L of Wichita v. Orpheum Theater Co., Ltd.,* 810 F.Supp. 1184, 1192–93 (D.Kan.1992) (applying K.S.A. 60–512(2), which provides three-year statute of limitations for actions based upon liability created by statute, where Kansas securities laws do not contain statute of limitations). A fraud-based cause of action under Kansas securities laws accrues when the violation is, or reasonably should have been, discovered. *Kelly,* 889 P.2d at 137.

The statute of limitations for a claim based upon the violation of federal securities laws is one year after the discovery of the facts constituting the violation and within three years after such violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The one-year statute of limitations period commences when the plaintiff is put on inquiry notice; that is, when an investor, in exercise of reasonable diligence, should have discovered facts underlying the alleged fraud, but when plaintiff could not have reasonably discovered facts underlying the alleged fraud until some period after being

put on inquiry notice, the limitations period begins when plaintiff, in exercise of reasonable diligence, should have discovered facts underlying the alleged fraud. *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1201 (10th Cir.1998). Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself. *Id.* at 1203.

Plaintiffs' fraud and securities laws causes of action accrued when plaintiff discovered or reasonably should have discovered the fraudulent activities by the defendant. In *Waite v. Adler*, 239 Kan. 1, 716 P.2d 524 (1986), the Kansas Supreme Court addressed the accrual of fraud claims. There, plaintiff was approached in November 1977 by a car dealer seeking investment in his car dealership. Plaintiff went to the car dealer's bank and sought information about the dealership. A bank officer provided plaintiff with certain information, including information that the business was losing money. Plaintiff thereafter invested in the dealership. In January 1978, the bank reduced the bank floor plan from $235,000 to $75,000. Plaintiff was aware of this development and took steps to address the problems that existed at the dealership. On May 12, 1978, the bank foreclosed its lien and took control of the inventory until such time as it could be liquidated and applied to the loan balances at the bank. The car dealer then called plaintiff and informed him that the bank was closing the business. Plaintiff filed suit against the bank officer and the bank on May 30, 1980 under various theories to recover losses resulting from alleged fraudulent misrepresentations as to the dealership's financial status. Following trial, a jury found for the plaintiff. On appeal, the Kansas Supreme Court found that plaintiff's claims were barred by the two-year statute of limitations set forth in K.S.A. 60–513(a)(3). Plaintiff had argued that he was not aware of the poor credit standing of the dealership with the bank until he discovered the true facts after the case was filed. The defendants, however, maintained that the plaintiff knew or should have known that the credit

standing of the dealership with the bank was bad in January 1978 when the floor plan was reduced, or, at the very latest, on May 12, 1978, when the bank called the loan and started to liquidate the inventory. The Supreme Court determined that any fraud by the bank officer or the bank was discovered, or with reasonable diligence could have been discovered, not later than May 12, 1978, when the bank took over the dealership. 716 P.2d at 528.

■ Here, much like the situation in *Waite*, plaintiffs discovered or should have discovered any fraud by the defendant in January 1994 when they were aware that Mrs. Klugg's assets were gone and that Hardesty had placed at least a part of the assets with the defendant. The discovery rule does not toll the statute of limitations until the plaintiff can appear in court with knowledge of every detail and show the exact method by which the defendant perpetrated the fraud. Rather, the threshold is lower—the statute begins to run when the plaintiff has such information that a more thorough investigation is warranted. This information was available to plaintiffs no later than January 1994. Given this finding, the court finds that the defendant is entitled to summary judgment on plaintiffs' fraud and securities laws claims.

### C. *Breach of Contract*

In their fifth claim for relief, plaintiffs allege that "Merrill Lynch entered into a contract with the trust, and its actions and failures to act ... constitute a breach of the express and implied provisions of such contract." The statute of limitations for breach of contract claims based on contracts not in writing is three years. K.S.A. 60–512(1). The statute of limitations for breach of contract claims based on written contracts is five years. K.S.A. 60–511(1). "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes."

*Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 54 (1990).

■ The date for the accrual of the plaintiffs' contract cannot be determined from the present record. The latest date, however, for the accrual of such claims is September 13, 1993, the last date the defendant allowed Hardesty to engage in any activity concerning the assets in the account where the Klugg Trust assets were held. There is no evidence that either Hardesty or the defendant took any action concerning the Klugg Trust account at any time after that date. Plaintiffs have acknowledged that the defendant never provided them with advice either before or after that date. Accordingly, the court finds that any contract claims based on an oral contract are barred. However, the court cannot find that plaintiffs' claims based upon the breach of a written contract are barred by the statute of limitations. The alleged breach of a written contract may have occurred during the applicable five-year statute of limitations.

### V.

Plaintiffs have raised various arguments as to why their claims are not barred by the statute of limitations. In reaching the aforementioned conclusions, the court has rejected these arguments. The court shall briefly discuss our analysis of these contentions.

First, plaintiffs suggest repeatedly that they did not have objective knowledge of the wrongs committed by the defendant until well after the bankruptcy was filed. They suggest that the fact that the bankruptcy schedules noted that Hardesty owed Mrs. Klugg $547,063.00 did not reveal that the defendant had committed any wrongs. They argue they did not obtain enough information from the defendant to understand its involvement until sometime after March 22, 1994, when the defendant responded to a subpoena issued by the unsecured creditors committee.

The court has determined that all of plaintiffs' claims, except for their breach of written contract claim, accrued by at least January 1994. It was at this point that plaintiffs had sufficient information to investigate any possible negligence, fraud, breach of oral contract and violations of federal and state securities laws. Plaintiffs understood that the assets were gone and that the defendant had held at least some of them.

Plaintiffs also argue that the knowledge gained by the counsel for the unsecured creditors committee should not be imputed to Ms. Bagby or Mrs. Klugg. The court is not persuaded that either the facts or the law help the plaintiffs on this contention. First, the evidence before the court shows that Mr. Woner was representing Mrs. Klugg during this period. Second, the significance of this contention appears irrelevant since plaintiffs clearly understood that they had been injured by January 1994.

Plaintiffs next contend that because Mrs. Klugg had a fiduciary relationship with the defendant, then she was under no duty to discover the facts of her injury. Thus, they assert that the statute of limitations was tolled through April 1995, the time when the fiduciary relationship ended. In support of this argument, plaintiffs rely upon California law, specifically *Hobbs v. Bateman Eichler, Hill Richards, Inc.,* 164 Cal.App.3d 174, 210 Cal.Rptr. 387 (1985).

■ The court is not persuaded that this doctrine, even if it were recognized in Kansas, would assist the plaintiff here. In *Hobbs,* the plaintiff was a widow who wanted a broker to handle the investment portfolio her husband had left her when he died. She went to a broker employed by the defendant brokerage firm and made clear to him that she wanted her stocks handled conservatively because the interest from her husband's portfolio was essentially her only income. The broker filled out a form which stated that plaintiff's investment goals were conservative, but later changed this form without her permission. Thereafter, the broker began making trades and purchases on a regular

**1302**

basis without the plaintiff's consent. Plaintiff did receive "confirmation slips" for each of these transactions, but did not know the balance in her account, or that many of the "distribution checks" she received from the defendant were actually paid out of principal. The California court held that plaintiff's claims, particularly her claim for breach of fiduciary duty, were not barred by the statute of limitations because she had no duty to investigate. 210 Cal.Rptr. at 404. In reaching this conclusion, the court applied the continuous course of conduct doctrine. This doctrine provides that the statute of limitations is generally tolled while the defendant acts in a fiduciary relationship to the plaintiff. *Id.* The court recognized, however, that the doctrine is not as broad as suggested by the plaintiff here. The doctrine applies in cases where the conduct of the defendant occurs prior to the discovery of the injury. The court stated: "However, once a plaintiff becomes aware of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with knowledge of the facts which would have been discovered by such an investigation." *Id.* The *Hobbs* court noted that the facts indicated that plaintiff did not even become suspicious that her account was being handled improperly until within the limitations period. *Id.* at 404–05.

Here, Mrs. Klugg knew in late 1993 that her assets had been removed from her trust by Hardesty without her knowledge or consent and that some of her trust assets had been in an account with the defendant. Thus, by late 1993, even under the continuing course of conduct rule, Mrs. Klugg was under a duty to investigate and the statute of limitations began to run. To allow the continuing course of conduct doctrine to toll the statute of limitations after discovery would, in effect, allow the plaintiff to acquiesce in the defendant's conduct for as long as convenient to the plaintiff, contrary to one of the purposes of the statute of limitations, which is to prevent the unexpected enforcement of stale claims.

■ Next, plaintiffs argue that the continuous relationship rule applies here and tolls the statute of limitations until the relationship between defendant and Mrs. Klugg ended. The defendant contends that this rule cannot be applied here for at least two reasons. First, the defendant contends that it has not been extended in Kansas beyond attorney-client relationships. Second, the defendant asserts that it is not applicable here where the trust and confidence on which the rule is based has come to an end.

The continuous representation rule is much like the continuing course of conduct doctrine. This rule, which has been applied in Kansas only to attorney-client relationships, fixes the time when the accrual of a cause of action occurs at the time of the termination of the attorney-client relationship. *Morrison v. Watkins,* 20 Kan. App.2d 411, 889 P.2d 140, 146 (1995). The rule, however, ceases to apply where "the trust and confidence on which the rule is based has come to an end." *Id.,* 889 P.2d at 147; *see also Gansert v. Corder,* 26 Kan.App.2d 151, 980 P.2d 1032, 1034–35 (1999). Here, plaintiffs were not accepting advice from the defendant, nor were they relying on any efforts of the defendant to remedy a situation. Plaintiffs concede that they never consulted with or were given advice by the defendant on anything. This is not the sort of relationship that the rule, even if it were applicable to a broker-customer relationship, was designed to protect. *Morrison,* 889 P.2d at 149 (declining to apply rule to an accountant where plaintiff "knew of no investments which he made for her" and there were no allegations that he "exercised influence over her or that she reposed any special confidence in him").

Finally, plaintiffs contend that any claim for breach of contract did not accrue until the termination of the contractual relationship. We disagree. The rule in Kansas, as suggested previously, is that breach of

contract claims accrue at the time of the breach. The exception noted by plaintiffs applies only in employment situations, and is therefore inapplicable here. *See Western Video Collectors, L.P. v. Mercantile Bank of Kansas*, 23 Kan.App.2d 703, 935 P.2d 237, 240 (1997).

In sum, the court shall grant summary judgment to the defendant on all of plaintiffs' claims except their claim for breach of a written contract. All of plaintiffs' other claims are barred by the applicable statutes of limitations.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 12) be hereby granted in part and denied in part. Judgment is hereby granted to defendant on all claims asserted by plaintiffs except the breach of a written contract claim. All of plaintiffs' other claims are barred by the applicable statutes of limitations.

**IT IS SO ORDERED.**