# United States Court of Appeals

## For the First Circuit

No. 03-1095

IN RE: NEW ENGLAND LIFE INSURANCE COMPANY
SALES PRACTICES LITIGATION,

Debtor,

---

S-G METALS INDUSTRIES, INC., on its own behalf and
on behalf of all other parties similarly situated,
Plaintiff, Appellant,

v.

NEW ENGLAND LIFE INSURANCE COMPANY,
Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Robert E. Keeton, Senior U.S. District Judge]

---

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,[*] Senior District Judge.

---

Amy E. Bauman, with whom Patrick J. Stueve, Brian J. Madden
and Kenneth E. Nelson, was on brief for appellant S-G Metals
Industries, Inc.
Richard N. Bien, with whom Alok Ahuja and Jeff LaRiche, was on
brief for appellee New England Life Insurance Company.

---

October 6, 2003

---

[*]Of the Northern District of California, sitting by
designation.

**SCHWARZER, <u>Senior District Judge</u>**.  S-G Metals Industries, Inc. ("S-G") appeals from the dismissal of its seven-count complaint against New England Life Insurance Company ("New England").  S-G alleges that New England engaged in a fraudulent scheme involving so-called "vanishing premiums" in the sale of life insurance policies, and asserts claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, common law fraud and negligent misrepresentation, negligent supervision, breach of contract and breach of fiduciary duty.  The District Court dismissed the claims as time barred.[1]  The Court had jurisdiction under 28 U.S.C. §§ 1331, 1367 and 1332, and we have jurisdiction under 28 U.S.C. § 1291.  Having found S-G's contention that the statutes of limitations were tolled to be without merit, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

S-G's claims arose out of its September 1985 purchase for its employees of corporate life insurance policies issued by New England.  It alleges that New England fraudulently represented that S-G would have to pay premiums for only six years, after which the premiums would "vanish."  S-G claims that New England based this projection on forecasts about dividend accumulations and performance it knew to be "inflated and unsustainable."

On August 17, 1990, New England sent written notice to

_____

[1]S-G did not appeal the dismissal of its contract claim.

-2-

S-G that it would have to pay premiums for an additional three years, moving any "vanishing point" beyond the six-year period projected at the time of sale. From time to time thereafter, New England sent written notices to S-G advising that it would have to pay premiums for a limited number of additional years. In 1996, a national class action was filed against New England, complaining of allegedly fraudulent sales practices and naming a class that included S-G. That action was settled in May 2000, but the settlement class excluded claimants with corporate-owned policies such as S-G. S-G then filed this action on March 12, 2002, in the United States District Court for the District of Kansas. On August 9, 2003, the case was transferred by the Judicial Panel on Multi-District Litigation to the United States District Court for the District of Massachusetts.

The District Court granted New England's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims. Applying Kansas law,[2] it held that each claim was time barred. For the fraud and misrepresentation claims, which have a two-year statute of limitations under Kansas law, KAN. STAT. ANN. § 60-513(a)(3) (2002), the Court applied the discovery rule to determine the date on which the claim accrued. Under Kansas law, "[f]raud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered." Bagby v. Merrill

---

[2]S-G does not contest the application of Kansas law.

Lynch, Pierce, Fenner & Smith, 104 F. Supp. 2d 1294, 1299-1300 (D. Kan. 2000) (stating that "the statute begins to run when the plaintiff has such information that a more thorough investigation is warranted."). The Court found that S-G had enough information to warrant a more thorough investigation by August 1990 at the latest, when New England notified it that premiums would not "vanish" for another three years. At that point, the Court reasoned, S-G knew or should have known that New England's alleged representations about the "vanishing points" were untrue. Applying the two-year statute of limitations, the time for filing the fraud and misrepresentation claims ran out in August 1992.

S-G's tort claims are also governed by a two-year statute of limitations. KAN. STAT. ANN. § 60-513(a)(4). The Court found for the same reasons that S-G's claim that New England negligently supervised its agents in the sale of "vanishing premium" policies was time barred. On similar reasoning, the Court held the RICO claim time barred. Applying the four-year statute of limitations for civil RICO claims and the discovery rule, see Rotella v. Wood, 528 U.S. 549, 554 (2000), the District Court held the claim time barred because S-G discovered the wrong in 1990.

Finally, the Court rejected S-G's contention that the statute of limitations was tolled by fraudulent concealment or the continuing wrong doctrine.

**DISCUSSION**

S-G asserts that the District Court erred in rejecting equitable tolling under the continuing wrong and fraudulent concealment doctrines. Our review of the court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is de novo. Blackstone Realty v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).

## I. THE CONTINUING WRONG DOCTRINE

S-G contends that the statute of limitations was tolled from 1985 until 1998, when it cancelled the policies, by reason of New England's repeated false representations concerning the "vanishing" point of premiums. It argues that the 1990 notice that additional premiums would be due was itself fraudulent and that the allegations in its complaint that it was kept in the dark about New England's fraudulent scheme raise triable issues of fact.

We agree with the District Court that when S-G received written notice from New England in August 1990 that premiums would be due for three more years, it had information that New England had misrepresented the "vanishing point" and that the financial information initially provided was incorrect. At that point, under Kansas's discovery rule, it had sufficient information to know that a more thorough investigation was warranted. See Bagby, 104 F. Supp. 2d at 1300.

Citing Tiberi v. Cigna Corp., 89 F.3d 1423 (10th Cir.

-5-

1996), S-G would have us apply the continuing wrong doctrine to toll the statute of limitations. But S-G's reliance on <u>Tiberi</u> is misplaced. In <u>Tiberi</u>, the court acknowledged that "the running of the statute of limitations in cases of fraud may be suspended by a repetition or continuation of the false representations which keeps the defrauded person in ignorance of the fraud." <u>Id.</u> at 1431 (quoting 54 C.J.S. *Limitations of Actions* § 195 (1987)). The court went on, however, to explain: "Thus, Tiberi cannot be penalized for his delay <u>if CIGNA's misrepresentations prevented him from ascertaining the cause of his injury</u>." <u>Id.</u> (emphasis added). <u>Tiberi</u> involved an action by an insurance agent against an insurance company, charging the latter with breach of contract and fraud arising out of an exclusive dealing arrangement between the parties. The gravamen of the action was that the insurance company had secretly withdrawn from and undermined the arrangement while continually assuring the agent that it would continue to support him. Reversing summary judgment, the court found:

> Tiberi had no reason to believe that he was being defrauded because CIGNA had given him every assurance that it would compensate him for his losses and reward him for remaining a COMPAR agent. Tiberi's allegations that CIGNA made these assurances while planning to dismantle the program constitute a continuing tort.

<u>Id.</u>

The instant case bears no resemblance to <u>Tiberi</u>. While S-G asserts that New England made repeated false representations

about vanishing points through 1998, it makes no claim that it received assurances from New England or that it was prevented from investigating the cause of its losses. To the contrary, S-G received so-called Premium Offset Statements from New England throughout the period, showing that premiums would be due for years to come. Thus, S-G was not "lulled" into foregoing legal action by New England's false representations that the premiums would "vanish" in the future. "[T]he [continuing wrong] doctrine cannot be employed where the plaintiff's injury is 'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.'" Id. (quoting Wilson v. Giesen, 956 F.2d 738, 743 (7th Cir. 1992)). Because S-G's alleged injury was "definite and discoverable" by August 1990 the statute of limitations was not tolled by the continuing wrong doctrine.

## II. THE FRAUDULENT CONCEALMENT DOCTRINE

S-G further contends that the statute of limitations was tolled by New England's fraudulent concealment of its wrongful actions. It offers a litany of deceptive practices, which it alleges concealed the fraudulent nature of the "vanishing premium" scheme. The August 1990 notice, it argues, was simply another fraudulent statement that contradicted earlier statements but did not reveal the fraud.

S-G's argument is not availing. "Under Kansas law, in order to constitute concealment of a cause of action within the

general rule tolling the statute of limitations, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." Wichita v. U.S. Gypsum Co., 72 F.3d 1491, 1499 (10th Cir. 1996) (citing Baker v. Board of Regents, 991 F.2d 628, 633 (10th Cir. 1993); Friends Univ. v. W.R. Grace & Co., 608 P.2d 936, 941 (Kan. 1980)). A plaintiff seeking to make use of the doctrine must "show [its] ignorance was not the result of [its] lack of diligence, but was due to affirmative acts or active deception to conceal facts giving rise to the claim." Wichita, 72 F.3d at 1499. New England did not prevent discovery of S-G's cause of action; on the contrary, its August 1990 notice told S-G that its representation that premiums would "vanish" after six years was false. S-G may not have known all the means by which the scheme was implemented but it knew facts that gave rise to its claim.

S-G also argues that the fraudulent concealment doctrine tolled the four-year statute of limitations on its RICO claim. We assume for purposes of discussion that equitable tolling doctrines apply to civil RICO claims. See Rotella, 528 U.S. at 560-61 ("In rejecting pattern discovery as a basic rule [for the RICO statute of limitations], we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling . . . ."). The statute on a RICO claim runs from the date the plaintiff discovered or should have discovered

the injury. <u>Potomac Elec. Power Co.</u> v. <u>Electric Motor & Supply, Inc.</u>, 262 F.3d 260, 266 (4th Cir. 2001) (citing <u>Klehr</u> v. <u>A.O. Smith Corp.</u>, 521 U.S. 179, 183 (1997)). For the reasons discussed above, the fraudulent concealment doctrine did not toll the statute on S-G's RICO claim.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.

**AFFIRMED.**