In re NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION

SG Metals Industries, Inc., Plaintiff

v.

New England Life Insurance Company, Defendant

No. MDL–1105(REK).
No. CIV.A.02–11626–REK.

United States District Court, D. Massachusetts.

Nov. 26, 2002.

72

Patrick J. Stueve, Brian J. Madden, Steve Heider Siegel, Kansas city, MO, for plaintiffs.

Jonathan T. Foot, Peter S. Terris, Christine Marie Griffin, Palmer & Dodge, LLP, Boston, MA, for defendants.

## Opinion and Order

KEETON, District Judge.

### I. Pending Motion

Pending for decision is Defendant's Motion to Dismiss All Claims (filed May 28, 2002 in United States District Court for the District of Kansas). Plaintiff filed an opposition in United States District Court for the District of Kansas, before the transfer to this court.

### II. Relevant Factual Background

In September of 1985, plaintiff purchased corporate life insurance policies for its employees. Plaintiff alleges that defendant fraudulently represented that it would need to pay premiums through six years and then the premiums would vanish. According to plaintiff, defendant made additional fraudulent representations to plaintiff regarding the amount of time that plaintiff would need to pay premiums before they would vanish. On August 17,

1990, defendant represented to plaintiff, in writing, that its premiums would vanish in another three years.

Plaintiff further alleges that defendant continued to perpetuate its "vanishing premium" scheme by continually representing to plaintiff that it need only pay premiums for a limited number of years. Each of the representations extended the "vanishing point" several years. In 1998, plaintiff cancelled its policies.

### III. Relevant Procedural Background

In July of 1996, this court began proceedings under a Multi–District Litigation Panel Order in a national class action filed against defendant for fraudulent insurance sales practices. The plaintiffs' complaints alleged that defendant used deceptive tactics in its sales practices, artificially inflating projected dividends and "vanishing premiums."

On or about May 19, 2000, the parties to the MDL class action entered into a Stipulation of Settlement. The Stipulation of Settlement, defined the class as "person(s) or entity(ies), who,...had...an ownership interest in a Policy...." (Plaintiff's opposition at 4). The definition of "policy" in the Stipulation, however, excluded "Corporate Owned Life Insurance Policies, Bank Owned Life Insurance Policies, Policies issued to pension plans..., or work site marketing Policies..." Plaintiff's policies, because they were corporate owned policies, were therefore excluded from the class action settlement. On or about October 4, 2000, the court ordered a final judgment in the MDL proceedings, approving the class settlement.

On or about March 12, 2002, plaintiff filed a complaint against defendant asserting the following claims: violation of the Racketeer Influenced and Corrupt Organizations act ("RICO") (Count I), common law fraud (Count II), fraudulent inducement (Count III), negligent misrepresenta-

tion (Count IV), negligent supervision (Count V), breach of contract (Count VI), and breach of fiduciary duty (Count VII). Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that: (1) plaintiff's claims are barred by statutes of limitation and (2) plaintiff's fiduciary duty claim fails as a matter of law because defendant did not owe a fiduciary duty to plaintiff. Plaintiff's original complaint, defendant's motion to dismiss, and plaintiff's opposition were all filed in the United States District Court for the District of Kansas. The case was then transferred to this court by order of the MDL panel exercising its authority under 28 U.S.C. § 1407, the multidistrict litigation statute.

### IV. Legal Standard

The court can dismiss for failure to state a claim "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 70 (1st Cir.2000) (quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)) (internal quotation marks deleted). When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations of plaintiff's complaint as true and must give plaintiff the benefit of all reasonable inferences. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998).

### V. The Merits

#### A. Choice of Law

A threshold issue I must consider is what law applies in this case. A federal court sitting in diversity normally applies the choice of law rules and the statutes of limitation of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This cause of action was ini-

tially filed in the United States District Court for the District of Kansas and was transferred to this court under 28 U.S.C. § 1407. "[W]hen a case is transferred, it is well-known that the transferee court, this [c]ourt [in this case], must apply the choice of law rule of the transferor court, whether that case is transferred under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1407." *Masonite Corp. Hardboard Siding Products Liability Litigation* 170 F.R.D. 417, 422 (E.D.La.1997) (internal citations omitted). I will apply Kansas choice of law rules.

■■■ For tort claims, Kansas follows the "lex loci delicti" approach, meaning that the law of the place of the wrong controls. *Maberry v. Said,* 911 F.Supp. 1393, 1399 (D.Kan.1995). In the case at hand, the wrong alleged occurred in Kansas, where plaintiff is located. Under Kansas choice of law rules, therefore, Kansas substantive law governs plaintiff's tort claims.

■■■ For contract claims, Kansas applies the law of the state in which the last act necessary for contract formation occurred. *Smith v. Hawkeye–Security Ins. Co.,* 842 F.Supp. 1373, 1375 (D.Kan.1994). The last act necessary for formation of an insurance contract ordinarily is either (1) delivery of the policy or (2) payment of the first premium. *Duggan v. Mass. Mtual Life Ins. Co.,* 736 F.Supp. 1072, 1074–75 (D.Kan.1990). In the case at hand, the policies were sent to plaintiff in Kansas and neither party disputes that the plaintiff sent its initial premium from Kansas. Under Kansas choice of law rules, therefore, Kansas substantive law governs plaintiff's contractual claims.

■■■ For statute of limitation issues, Kansas choice of law rules apply lex fori, meaning that the law of the forum controls. *Menne v. Celotex Corp.,* 722

F.Supp. 662, 663 (D.Kan.1989). Under Kansas law, therefore, the law of the forum state determines the applicable statute of limitation. *F.J. Joseph, Inc. v. Lida Adver., Inc.,* 2 F.Supp.2d 1425, 1427 n. 3 (D.Kan.1998). Because the forum state of the transferor court was Kansas, I will apply Kansas statutes of limitation.

**B. Plaintiff's claims accrued outside the applicable statutes of limitation.**

**1. Plaintiff's claims for common law fraud (Count II), fraud in the inducement (Count III), and negligent misrepresentation (Count IV).**

■■■ Kansas has a two-year statute of limitation on fraud claims. K.S.A. § 60–513(a)(3). In determining when the causes of action accrued, I must apply a discovery rule. *Bagby v. Merrill Lynch, Pierce, Fenner & Smith,* 104 F.Supp.2d 1294, 1299 (D.Kan.2000). Under Kansas law, "[f]raud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered." *Id.* In explaining the discovery rule, the court in *Bagby* stated;

> The discovery rule does not toll the statute of limitations until the plaintiff can appear in court with knowledge of every detail and show the exact method by which defendant perpetrated the fraud. Rather, the threshold is lower—the statute begins to run when the plaintiff has such information that a more thorough investigation is warranted.

*Id.* at 1300.

Plaintiff had such information to warrant a more thorough investigation either (1) when it received the policies that did not contain the alleged representations of the vanishing premiums or (2) when it received notice that additional payments

would still be due after the six year period ending in 1991. The policies were delivered in September of 1985 and plaintiff admits that it received a written notice on August 17, 1990, indicating that premiums would not vanish until another three years.

The policies that plaintiff received in September of 1985 indicated that premiums were due for the life of the policy and that dividends were not guaranteed. Plaintiff argues, however, that nothing in those policies directly contradicted the alleged misrepresentations. Plaintiff alleges that defendant informed plaintiff that, over time, the premiums due under the policy would be paid by the accumulated value of the policy. Plaintiff contends that the fact that the policy indicates that premiums are due for the life of the policy does not contradict these misrepresentations. Instead, "[t]he policy is silent on the critical issue, namely, the *source* of those premium payments in the later years of the policy., *i.e.*, whether the premium payments would come from the dividends or out of the insured's pockets." (Plaintiff's letter, Docket No. 4 at 2).

In support of this argument, plaintiff cites *Parkhill v. Minnesota Mutual Life Ins. Co.*, 995 F.Supp. 983 (D.Minn.1998) as being "directly on point." (Plaintiff's letter at 2). In that case, the court held that, *for purposes of the parol evidence rule,* policy language (similar to the policy language at issue in the case at hand) was not inconsistent with the oral representations that the premiums would be paid out of dividends and not out of the insured's pocket. *Id.* at 990. I am not deciding, however, whether the parol evidence applies to the representations and for that reason, the case is not "directly on point," nor is it decisive regarding whether the policies' silence on what plaintiff calls "the critical issue," put plaintiff on notice that a more thorough investigation was warrant-

ed. In response, defendant asserts that numerous cases in which the facts were in all material respects identical to the facts of this case have held that the fraud and misrepresentation causes of action accrued when the policy was delivered.

I need not and do not resolve the disputes between the parties over the foregoing issues. Nor do I need to decide whether the language of the policies was sufficient to put plaintiff on notice that a more thorough investigation was warranted. This is true because at the very latest, plaintiff's fraud and misrepresentation causes of action accrued when plaintiff received the August 17, 1990 written indication from defendant that additional out-of-pocket premiums would be due for three more years. On that date, plaintiff had sufficient information to know that defendant had misrepresented the "vanishing point" and that the financial information initially provided was inaccurate. Applying the two year statute of limitation, the time for filing plaintiff's fraud and misrepresentation causes of action ran out in August 1992, well before the filing of this lawsuit.

### 2. Plaintiff's negligent supervision claim (Count V).

■ Kansas also has a two-year statute of limitation on claims for negligence and negligent supervision. K.S.A. § 60–513(a)(4). Negligence claims do not accrue until the "fact of injury becomes reasonably ascertainable to the injured party...." K.S.A. § 60–513(b).

Plaintiff alleges that defendant negligently supervised its agents, resulting in the sale of "vanishing premium" policies in September, 1985. Based on the representations of defendant's agents, plaintiff alleges that it believed no out-of-pocket premiums would be due after six years. For the reasons discussed in the previous sec-

tion, plaintiff's injury was reasonably ascertainable when it received the August 1990 written notification that out-of-pocket premiums would be due for another three years. Applying the two-year statute of limitation, the time for filing plaintiff's claim for negligent supervision ran out in August of 1992.

### 3. Plaintiff's RICO claim (Count I).

■■■■ The statute of limitation on a civil RICO claim is four years. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Although the statute of limitation is established, the proper test for accrual is still uncertain. At one time a three-way circuit split existed regarding the proper accrual test for RICO claims. The three different tests were: (1) the injury discovery accrual rule, (2) injury and pattern discovery rule, and (3) the "last predicate act" rule. The United States Supreme Court has rejected the second and third of these tests. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (rejecting the last predicate rule), *Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (rejecting the injury and pattern discovery rule). The Supreme Court, however, did not "settle upon a final rule." *Id.* at 554, 120 S.Ct. 1075. Instead, the Court left open the possibility of one of two tests: (1) the injury discovery accrual rule and (2) the injury occurrence rule, under which discovery is irrelevant. *Id.* fn. 2.

Even if I apply the accrual test more favorable to plaintiff, the injury discovery rule, plaintiff's RICO claim is time barred. When plaintiff received the written notice that additional out-of-pocket premiums would be due after the six years were completed, plaintiff discovered its injury. As explained above, that occurred in August of 1990, and therefore the time for filing the RICO claim ran out in August of 1995.

### 4. Plaintiff's breach of contract claim (Count VI).

■■■■ Plaintiff's complaint includes allegations of breaches of both written and oral contracts. Kansas has a three-year statute of limitation for breach of a contract not in writing and a five-year statute of limitation for breach of a written contract, K.S.A. § 60–512(1) and 60–511(1). A breach of contract cause of action accrues at the moment of breach. *Bagby*, 104 F.Supp.2d at 1300–01.

■■■■ Plaintiff bases its oral contract claim on the defendant's alleged promise that plaintiff's out-of-pocket premiums would vanish after six years. The six years ran out in 1991, and plaintiff continued to have to pay premiums. Therefore, the time for filing any oral contract claim ran out in 1994. This complaint was filed well after the time for filing the oral contract claim ran out.

■■■■ Plaintiff bases its written contract on what it calls "written promises" in the illustrations that defendant sent to plaintiff in 1990, 1994, 1995, 1997, and 1998. Plaintiff argues that these illustrations combine to create a written contract because "a court may ascertain the existence and terms of an agreement from a combination of written instruments." (Plaintiff's opposition at 16) (quoting *Reznik v. McKee*, 216 Kan. 659, 673, 534 P.2d 243 (1975)). This basic principle of contract formation and interpretation, however, does not apply to the illustrations. By plaintiff's own admission, the illustrations had different dates for the vanishing point. These documents directly conflicted with one another and could not, therefore, be considered to create a contract. Also, because the illustrations were sent to plaintiff many years after the policy was formed in 1986, plain-

tiff cannot successfully argue that he expected that such illustrations were part of the original insurance contract. Nor does it appear that plaintiff even attempts to make such an argument. Therefore, plaintiff does not have a valid claim for breach of a written contract.

 Plaintiff argues that, regardless of whether a three or five year statute of frauds applies, the contract claim is not time barred because this is a continuing contract claim. In making this argument, plaintiff quotes *G.N. Rupe v. Triton Oil & Gas Corp.;*

> Under Kansas law, a cause of action for breach of an obligation to make payments under a continuing contract generally accrues at the time each payment becomes due, thus giving rise to a separate cause of action for each failure to make payment when due.

806 F.Supp. 1495, 1498 (D.Kan.1992). Plaintiff concludes that defendant again and again broke "the contract every time that Plaintiff was required to pay another premium beyond that promised by Defendant," and that "Plaintiff's contract claim accrued no later than 1998, the date upon which Plaintiff extinguished the insurance policies." (Plaintiff's opposition at 17–18).

 In Kansas, application of the continuing contract concept cannot be based solely on a continuing contractual relationship. *Bagby,* 174 F.Supp.2d at 1203. Instead, the continuing contract theory "has only been applied where continuing payments are required." *Id.* In this case, plaintiff does not allege that defendant promised to make continuing payments after the six years ran out. Plaintiff alleges only that defendant promised that the policy would pay for itself eventually. The only continuing payments by one party to benefit another are the premium payments made by plaintiff to defendant. This case does not turn on plaintiff's failure to make a payment or payments. The continuing contract cases, therefore, are inapplicable, and plaintiff's cause of action accrued when defendant broke the contract. Defendant broke the contract when the policy did not begin to pay for itself, as promised, in 1991. Applying the three year limitation for oral contracts (because as stated above, the claim for breach of written contract is not valid), the time for filing the contract claim ran out in 1994, well before the filing of this lawsuit.

**5. Plaintiff's breach of fiduciary duty claim.**

 A dispute exists regarding whether defendant and plaintiff were in a fiduciary relationship. I need not decide that issue, however, because even if I assume such an implied fiduciary relationship existed in this case, I still must conclude that plaintiff's claim for breach of fiduciary duty is time barred.

Under Kansas law, a breach of fiduciary duty is governed by a two-year statute of limitation. K.S.A. § 60–513(a)(4). To determine when the cause of action accrued, I must look to when the plaintiff knew or reasonably could have been expected to know of the breach of the duty. As with all of the claims discussed above, at the very latest, plaintiff knew of the breach when it received the written statement in August of 1990 indicating that it would be required to pay premiums for three more years. Because the claim accrued in 1990, the time for filing it ran out in 1992. It is therefore time barred.

**C. No equitable tolling doctrine applies.**

**1. Three asserted equitable doctrines**

Plaintiff argues that the statutes of limitation for its claims were tolled by three equitable doctrines: (1) fraudulent conceal-

ment, (2) continuing wrong, and (3) class action tolling. None of these doctrines applies to this case, for the reasons explained in parts 2–4, immediately below.

## 2. Fraudulent concealment

 Under the doctrine of fraudulent concealment, plaintiff's fraud claims are tolled until the fraud is discovered. *City of Wichita v. U.S. Gypsum Co.,* 72 F.3d 1491, 1499 (10th Cir.1996). To support a suspension of the statute of limitation, one must show "something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Id.* at 1499. Plaintiff has pointed to no affirmative step taken by defendants that was designed to prevent plaintiff's discovery of the fraud. Instead, plaintiff acknowledges that defendant provided plaintiff with a statement in August of 1990 indicating that out-of-pocket premiums would be due after the six years ran out. This statement, in addition to indicating that defendant's were not actively concealing the alleged fraud, also demonstrates when plaintiff discovered the fraud. Therefore, even if some affirmative concealment tolled the statute of limitation up to that point, the tolling ceased when plaintiff received the document and had knowledge of the alleged fraud.

## 3. Continuing wrong

 Plaintiff contends that the statute of limitation was tolled by defendant's alleged "continuing wrongs" of continuing to provide plaintiff with illustrations each of which extended the "vanishing point" farther than the last. Citing *Tiberi v. CIigna Corp.,* 89 F.3d 1423, 1431 (10th Cir.1996) plaintiff argues that under this doctrine, the running of the statute of limitation "may be suspended by a repetition or continuation of wrongful conduct which keeps the injured person in ignorance of the harm." (Plaintiff's opposition at 13). This doctrine does not apply to this case, however, because, by plaintiff's own admission, plaintiff was not kept in ignorance of the harm. Instead, the illustrations on which plaintiff bases his argument for applying the tolling doctrine of continuing wrong, in fact gave plaintiff notice of the harm.

## 4. Class action tolling

 Finally, plaintiff claims that the causes of action are tolled by the class action that was previously filed against New England and resulted in a settlement that excluded policies such as plaintiff's from recovering under the settlement. Plaintiff admits that the class action was filed in July of 1996. (Plaintiff's opposition at 4). As I found in the previous sections of this opinion, all of plaintiff's causes of action ran out before 1996. By the time the class action was filed, therefore, plaintiff's claims were already time barred, and the class action tolling doctrine cannot toll a claim that is already time barred.

## ORDER

For the foregoing reasons, it is ORDERED:

The clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

This civil action is DISMISSED with prejudice. Costs are awarded to defendants.